[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
JUDGE'S DECISION ONLY
BEFORE:
APPEARANCES:
 ATTORNEY FOR THE PLAINTIFF:
EDWARD DOMNARSKI, JR., ESQ. 29 Elm Street Old Saybrook, Connecticut 06475
 ATTORNEY FOR THE DEFENDANT:
GERALDINE BATTISTOLI, ESQ. Boston Post Road Westbrook, Connecticut
 Rosa N. Goodney Court Recording Monitor 1 Court Street Middletown, Connecticut 06457
Tel: 343-6515
JUDGE'S DECISION ONLY:
(Whereupon the Court was in session to render its decision, after hearing the matter.)
THE COURT: All right, for the record, this is docket number 70267, Andrew VanderSloot versus Mildred VanderSloot.
The following constitutes this Court's Memorandum of Decision:
The Court makes the following — finds the followings facts to have been proven:
1. The plaintiff and the defendant by the maiden name of Mildred D. Sumner, were intermarried on December the 16th, 1961, in Essex, Connecticut.
2. At least one of the parties to this action CT Page 663 has resided continuously in the State of Connecticut for at least one year next preceding the date of the filing of the complaint.
3. The plaintiff and the defendant have no minor children issue of the marriage.
4. No other minor children have been born to the plaintiff — to the defendant wife, since the date of the marriage.
5. The marriage of the parties is broken down irretrievably, without reasonable prospect for reconciliation.
6. The plaintiff is age fifty-six, in good health, a graduate of the University of Connecticut with a Bachelor of Science Degree in Insurance Administration, and is employed the Aetna Casualty Assurity Company, as a manager in property underwriting, and in 1993 earned ninety-two thousand, 0, ninety-nine dollars and forty-eight cents, which included a bonus paid in 1994, of fifteen thousand dollars, and currently earns the sum of seventy-eight thousand dollars per year.
7. The defendant is age fifty-five, in good health, has an Associate's Degree, a Florida Real Estate license, and worked for the Internal Revenue Service for approximately thirteen years, until 1992, when she voluntarily terminated her employment, because she wanted something easier. And at the time of her quitting said employment, was earning twenty-eight thousand dollars per year. Presently she does odd jobs, but does not have gainful full time employment. The Court finds that her termination for employment with the IRS was without just cause, and done voluntarily on her own basis, and felt that at the time of this dissolution action, with normal three percent increments, she'd be making in excess of thirty thousand dollars per year, and has taken this into account in any award of limited periodically made as here and after stated. CT Page 664
8. In 1993, the parties sold their residence, and after the payment of expenses, the defendant received the sum of sixty-one thousand, four hundred seventy-one dollars, and thirty-five cents, and the defendant received the sum of sixty-one thousand, five hundred fifty-five dollars, prior to the payment of any fees due to her former attorney.
9. The plaintiff testified that the defendant left the marital home for Florida in August of 1993, without telling him, other than leaving him a written message, and that he still cared for her at that time. The plaintiff further testified that his wife, although an excellent mother, was not supportive of him, and very critical of him.
The defendant, in turn, testified that her husband was physically abusive on several occasions, and was unfaithful to her. And she testified that he had purchased an airline ticket for one Lisa Brewer, to the Island of Maui, (phonetic). Although the plaintiff did admit the purchase of such a ticket, he denied ever being abusive or unfaithful to the defendant wife. The Court is not persuaded that the defendant has proved either the allegation of physical abuse, or marital infidelity by the requisite degree of proof, and accordingly finds them unproven.
10. The Court further finds that the fault for the breakdown of the marriage should not be attributed to a greater extent to either the plaintiff or the defendant. After reviewing all of the facts found, the testimony and documentary — the testimonial and documentary evidence presented, and the reasonable inferences therefrom made, and the statutory criteria set forth in Connecticut General Statute section,46b-81, and 46b-82, the Court enters the following orders.:
1. A decree of dissolution on the ground of irretrievable breakdown may enter.
2. The 1993 Cougar is set over to the CT Page 665 defendant wife. That's the Mercury Cougar automobile.
3. The nine shares of Houston Industries are set over to the defendant wife.
4. The one hundred and twenty-nine shares of Reliance Group are set over to the plaintiff husband.
5. The Liberty Bank for Savings, savings account, checking account and CD on the plaintiff's financial affidavit of today's date, are to be retained by the plaintiff husband.
5. The First Montaug (phonetic) Services Corporation Account is set over to the plaintiff husband.
6. The Nuveen tax free municipal bond fund is set over in total to the defendant wife.
7. The plaintiff husband shall designate the defendant wife as irrevocable beneficiary on so much of his life insurance policy with the Aetna, as is necessary to guaranty the payment of his alimony obligation here and after stated.
8. The plaintiff husband shall assign to the defendant wife by qualified domestic relations order, fifty per cent of 401K (his incentive savings plan), with Aetna, as of today's value, which is Wednesday, the 18th of January, 1995.
9. The plaintiff husband shall assign to the defendant wife, by qualified domestic relations order, fifty per cent of his pension plan with Aetna, as of today's value.
10. As limited periodic alimony, the plaintiff husband shall pay to the defendant wife, the sum of four hundred dollars per week for a period of three years, the sum of three hundred fifty dollars a week for a period of three years, and the sum of three hundred dollars for a period CT Page 666 of three years, so that the total term limit for the alimony award is nine years. Said sum shall be non modifiable as to term and amount by the defendant, and shall terminate upon the defendant's death, remarriage, or cohabitation with a non related adult male. Said sum, however, shall be modifiable at the discretion of the Court by motion brought by the plaintiff, in the event of a involuntary termination or involuntary retirement of the plaintiff, by his employer.
11. As additional alimony, the plaintiff shall pay to the defendant wife, twenty-five percent of any bonus paid to him by his employer, during the term of his employment, within thirty days of the receipt of said bonus.
12th. The plaintiff shall provide the defendant with health insurance available through his place of employment, at his expense, through December 31st, 1996. Thereafter the defendant may elect to stay on his insurance for whatever balance of statutory period is allowed, at her own cost.
13. As an allowance to prosecute, the plaintiff shall pay to the defendant's Counsel, the sum of one thousand, five hundred dollars, within thirty days from today's date.
The reporter is directed to prepare a transcript for signature by the Court, of this Memorandum of Decision.
Any questions, Counsel, anything that the Court omitted?
MR. DOMNARSKI: One matter, Your Honor, I think we discovered in conference, that both cars were jointly owned, and perhaps you could give us an order that the Victoria, or the Ford goes to —
THE COURT: Is there any problem with that?
MS. BATTISTOLI: No, Your Honor. CT Page 667
THE COURT: Okay, as an additional order of the Court, the 1993 Ford Crown Victoria is set over to the plaintiff husband.
MS. BATTISTOLI: And the Mercury to the wife?
THE COURT: I had said that very first thing as set over to the defendant wife.
MS. BATTISTOLI: I'm sorry, Your Honor.
And, Your Honor, for the record, the defendant wife waives the claim to an immediate wage execution.
THE COURT: Thank you, we'll make that contingent.
MR. DOMNARSKI: Your Honor, I — I appreciate the clarity of your decision, but would it be allowed for me, just to make sure that, if there's Mister — any client — to question my client, that I could voice them at this time, if you could give me a moment?
THE COURT: I don't re — I'll try to remember what I have said. I have been working on this diligently since the time we recessed, and frankly, I have writer's cramp, at the moment.
MR. DOMNARSKI: Okay.
Your Honor, if I — I made — I was writing as fast as I could, too. You — you are asking for the health insurance under Cobra, to be paid for Mr. VanderSloot, until —
THE COURT: December 31st, 1996.
MR. DOMNARSKI: Okay, for two years at his expense?
THE COURT: Right.
MR. DOMNARSKI: And then after that, at her CT Page 668 expense.
THE COURT: It is going to hurt a little bit, Mr. VanderSloot —
THE PLAINTIFF: No, but I was just — my question that I asked, I didn't know whether the company allows me to do that.
MS. BATTISTOLI: It's by law, Your Honor, it's by — under the insurance sections of the law —
MR. DOMNARSKI: Yes, I'm think they will.
MS. BATTISTOLI: I'm sure Aetna complies with the insurance sections of the law.
THE COURT: Most of the time.
MR. DOMNARSKI: I would hope so.
THE COURT: All right, I made that comment off hand, and I really don't know whether or not, but I — it is under the law.
THE PLAINTIFF: It is.
THE COURT: Yes. All right?
THE PLAINTIFF: Fine, fine.
THE COURT: Now, you know, — Counsel, you, of course, — you know, please get copies of the Memorandum of Decision once it's typed up by, you know, the reporter, to Mr. and Mrs. VanderSloot.
It's been — I know it's been a very, very difficult day for both of you, and I know that the events leading up to today's date were probably even worse. I just want to take this opportunity to wish you — both of you the best of everything possible. I hope that you find some peace and solitude in the remaining years that God gives you. Although I made the decision today, without, you know, taking it home, and sitting on it for a CT Page 669 month, nothing would have come out any differently. I've taken this to be a very important matter. Counsel have both done a good job of bringing their client's essential claims to the attention of the Court, so that I could deal with them.
We'll stand in recess, sheriff.
MR. DOMNARSKI: Thank you, Your Honor.
MS. BATTISTOLI: Thank you, Your Honor.
THE COURT: You're welcome.
(Whereupon the Court recessed at 4:40 p. m.)
CERTIFICATE
I, Rosa N. Goodney, Court Recording Monitor, certify that the foregoing is a true and accurate transcript of the proceedings had in the above-entitled case, before Judge SALVATORE ARENA.
This the 18th day of January, 1995.
Rosa N. Goodney Court Recording Monitor